# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

PATRICIA KENNEDY,

             Plaintiff,

v.

UMC UNIVERSITY MEDICAL CENTER

             Defendant.

Case No. 2:14-cv-01678-RFB-PAL

**OPINION & ORDER**

Defendant's Motion for Summary Judgment

(Dkt. No. 50)

## I.      INTRODUCTION

Before the Court is a Motion for Summary Judgment (Dkt. No. 50) filed by Defendant UMC University Medical Center. For the reasons discussed below, the Motion for Summary Judgment is denied with respect to Plaintiff's sexual harassment claims under Title VII and N.R.S. 613.33. The Motion for Summary Judgment is granted with respect to Plaintiff's racial discrimination claims under Title VII, 42 U.S.C. § 1981, and N.R.S. 613.33; retaliation claims under Title VII; sexual harassment claim under 42 U.S.C. 1981; age discrimination claim under the Age Discrimination in Employment Act ("ADEA"); and intentional infliction of emotional distress claim.

## II.      BACKGROUND

Plaintiff Patricia Kennedy is a former employee of UMC University Medical Center. Kennedy brought an action under 42 U.S.C. § 2000 ("Title VII"), 42 U.S.C. § 1981, and N.R.S. 613.33, against Defendant UMC University Medical Center, alleging a hostile work environment as a result of sexual harassment, a hostile work environment as a result of racial discrimination, and retaliation. Plaintiff further alleges age discrimination in violation of 29 U.S.C. §§ 621-634 ("ADEA"), and intentional infliction of emotional distress. Plaintiff filed her Complaint on

October 13, 2014. ECF No. 1. Defendants filed a Motion for Summary Judgment on February 5, 2016. ECF No. 50. Plaintiff also named Doug Spring, Glen MacIntyre, and Steve Winkle in her complaint. On March 7, 2016, Plaintiff stipulated to dismissal of these individual defendants from the case, so only her claims against UMC remain. The Court held a hearing on Defendant's Motion for Summary Judgment on August 19, 2016.

### A.  Undisputed and Disputed Facts

The Court incorporates its discussion of the undisputed and disputed facts from its hearing on August 19, 2016. The Court discusses and elaborates these facts here.

### i.     *Undisputed Facts*

Kennedy's employment as a Legal Specialist at UMC's Risk Management Department commenced on December 17, 2008. In September 2011, Kennedy submitted a Position Description Questionnaire requesting an evaluation of her position's duties in order to determine if it should be reclassified. Kennedy's request for reclassification was denied and Human Resources notified Kennedy that it would wait until a new Director of Risk Management was hired before it reevaluated her position. Glen MacIntyre was hired as Director of Risk Management in July 2012. He was Kennedy's immediate supervisor. On May 18, 2013, Kennedy received notice that she would be reclassified from Legal Specialist to Risk Management Specialist, with a 4% raise.

Kennedy alleges that during MacIntyre's first two days of work in July 2012, he described individuals as "the Black guy" or "Black lady". She further alleges that on one subsequent occasion, MacIntyre told Kennedy that she did not look or sound Black. Kennedy is mixed race, and refers to herself as Black. Kennedy has stated in her deposition that she believes it is acceptable to describe someone as "Black" descriptively to identify them. She has also stated that she does not think Defendant MacIntyre is "against Black people." She has stated that she believes, in a business environment that referring descriptively to someone as Black is "inappropriate". She believed MacIntyre's comment "was an ignorant comment…quite frankly, I

1    knew he was from Tennessee, and I just figured he wasn't used to seeing people that look like

2    me, quite frankly."

3           On or about March 29, 2013, Hilari Alberto was hired as a paralegal in the Risk

4    Management Department. Alberto was 36 years old. Plaintiff was 56 years old. MacIntyre once

5    stated that he wanted a younger person in the office.

6           Steve Winkle, another employee with whom Plaintiff worked in the Risk Management

7    Department, made two complaints regarding Kennedy's work on April 16, 2013. On April 18,

8    2013, Winkle made an email complaint to Doug Spring and two other UMC employees

9    regarding Kennedy's refusals to cooperate with him to sign court petitions for work. On April

10   19, 2013, Kennedy filed a complaint against Winkle with UMC's Office of Diversity ("OOD")

11   alleging that "he made unnecessary contact with [her] on the pretext of work business," that he

12   "made suggestive sexual gestures", and that Kennedy's avoidance of him "appears to have

13   caused him to begin verbal abuse." Kennedy provided no further detail in her OOD complaint.

14   The OOD conducted an internal investigation and notified Kennedy on May 14, 2013, that

15   insufficient evidence was presented to sustain the charges against Mr. Winkle.

16          On June 6, 2013, MacIntyre placed Kennedy under a Performance Improvement Plan.

17   Complaints had occurred against Kennedy from various staff at UMC prior to the initiation of

18   the Performance Improvement Plan. On June 7, 2013, MacIntyre gave Kennedy an evaluation

19   which included negative remarks regarding courtesy towards patients on the phone, belligerent

20   behavior towards fellow employees, and a failure to modify behavior after being warned. The

21   evaluation contained high scores on technical work and duties. This performance evaluation was

22   a required step in Kennedy's reclassification process. On June 7, 2013, Doug Spring, an

23   employee in Human Resources, informed Kennedy that reclassification of her position required a

24   closing evaluation from MacIntyre, and that another evaluation would be performed following a

25   qualifying period in the new job classification.

26          On June 17, 2013, Kennedy filed a complaint with the Equal Employment Opportunity

27   Commission ("EEOC"), alleging discrimination based on sex, race, and age, and retaliation by

28   her employer. On July 15, 2014, the EEOC informed Plaintiff that after conducting an

investigation into Plaintiff's allegations of discrimination and retaliation, it concluded that no violations were found and that additional investigation is unlikely to establish any violations.

On July 23, 2013, Brenda Karatas, a Xerox employee, had a work-related dispute that resulted in Karatas making a complaint against Plaintiff. On August 2, 2013, Kennedy was given a Corrective Counseling Notice, a 1 day suspension without pay, and an extension of her Performance Improvement Plan by 30 days. On September 13, 2013, Kennedy attended a meeting with MacIntyre and with a Human Resources employee, Leah Conedy, to discuss her Performance Improvement Plan. At that meeting, Kennedy asked Conedy whether she could be transferred to a different department. Conedy arranged a transfer offer to the HR Department, and on October 8, 2013, Kennedy informed Conedy that she accepted the offer. On October 28, 2013, Kennedy was transferred to the HR Department.

In August 2014, the Chief Executive Officer of UMC informed board members, commissioners, directors, and managers, that widespread layoffs, impacting roughly 285 positions, would be taking place as a response to financial demands. On August 28, 2014, Kennedy was terminated from UMC.  In addition to Kennedy, two other employees in the HR Department were also laid off in August 2014. One of those employees had worked at UMC for 17 years, and the other for 20 or more years, and each had worked in the HR department longer than Kennedy had. Kennedy worked in the HR department for less than a year prior to her termination, and had worked at UMC for 5 years and 10 months. UMC has an administrative policy of layoffs based on seniority within position classifications.

### ii.    Disputed Facts

In the instant case, Kennedy alleges that Steve Winkle had an obvious erection in her presence on three occasions. The parties dispute whether the erections occurred.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

## IV.   ANALYSIS

### A. 42 U.S.C. § 1981: Hostile Work Environment as a Result of Sex Based Discrimination

Defendant argues that 42 U.S.C. § 1981 does not apply to claims of discrimination based on sex. Section 1981 provides that "all persons shall have the same right[s]…[as are] enjoyed by white citizens." 42 U.S.C. § 1981. It is not addressed to categories of selectivity based on sex. See Runyon v. McCrary, 42 U.S. 160, 167 (1976).  Plaintiff conceded this point at the hearing on this case.

Therefore, the Court dismisses any § 1981 claim to the extent that it is alleging sex based discrimination.

### B. Title VII and N.R.S. 613.33: Hostile Work Environment as a Result of Sex Based Discrimination

Nevada looks to the federal courts for guidance in discrimination cases applying its anti-discrimination statute, N.R.S. 613.33. See Pope v. Motel 6, 121 Nev. 307, 311, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases."). Therefore, the Court will analyze Plaintiff's Title VII and Nevada anti-discrimination claims together.

Defendant argues that there are no disputed issues of material fact as to Plaintiff's claim of a hostile work environment due to sexual harassment, and that she has failed to make out a *prima facie* case for that claim. To state a *prima facie* case for sexual harassment under Title VII, a plaintiff must allege that (1) the plaintiff was subjected to unwelcome sexual advances, conduct, or comments; (2) the harassment complained of was based on sex; and (3) the harassment was so severe or pervasive as to alter the conditions of the plaintiff's environment and create an abusive work environment. *See* Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); *see also* Vasquez v. City of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004). In order to be actionable under the statute, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Farragher v. City of Boca Raton, 477 U.S. 775, 787 (1998); *see also* Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005) (internal citations omitted).

Here, Kennedy's allegations of sexual harassment and a hostile workplace environment rests on the following alleged facts: that Winkle made sexual jokes in front of her that made her uncomfortable; that he licked his lips in front of her in a sexual manner three or four times; that he met with her more than was necessary to complete their work business; and that he had an obvious erection in her presence on three occasions. Defendant UMC argues that Kennedy has not provided sufficient evidence to support her allegations regarding the erections, and that even if all of these events occurred, they are insufficient to amount to a hostile or abusive environment. As it must on a motion for summary judgment by Defendant, the Court views the facts and draws all inferences in the light most favorable to Kennedy. While "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment", the Court finds that Kennedy's allegations regarding Winkle, especially his repeatedly having obvious erections in her presence on multiple occasions, could reasonably amount to an "objectively and subjectively offensive" work environment.  Therefore, the Court will allow Kennedy to proceed on her hostile work environment claims regarding sex based discrimination under Title VII and N.R.S. 613.33.

**C. Title VII, 42 U.S.C. § 1981, and N.R.S. 613.33: Hostile Work Environment as a Result of Racial Discrimination**

Section 1981 is analyzed under the same principles that apply to a title VII claim. *See* United Steel Workers Local 12-369 v. United Steel Workers Int'l, 728 F.3d 1107, 1118 (9th Cir. 2013); *see also* Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003). Therefore, the Court will treat Plaintiff's § 1981 claims of hostile work environment as a result of racial discrimination jointly with her Title VII, and N.R.S. 613.33 racial discrimination claims.

To prevail on a hostile workplace claim premised on race, a plaintiff must show: (1) that she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *See* Vasquez v. City of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan 2, 2004).

The Court finds no disputed issues of material fact regarding Kennedy's race-based harassment claims. The Court finds it to be undisputed that on multiple occasions, Kennedy's supervisor, Glen MacIntyre, described people in the office as "Black lady" or "Black guy", and that MacIntyre once told Kennedy that she did not look or sound Black. Kennedy argues that these types of descriptive racial identifiers amounted to a hostile environment of racial discrimination. However, this Court notes that "[c]onduct that is not severe or pervasive enough to create an objectively hostile work or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Farragher, 477 U.S. 775 *at* 778. In order to be actionable under the statute, an objectionable environment must be both subjectively and objectively objectionable. *See* Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005). The objective hostility of the environment must be considered "from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." Id.

Although a descriptive identifier of someone as "Black" may be considered impolite or inappropriate by some, it is not objectively pejorative or abusive. The three to four occasions

1   when MacIntyre made descriptive references to individuals as "Black" does not amount to a
2   severe, pervasive environment of racial discrimination. These statements are "offhand
3   comments" and "isolated incidents" which do not amount to discriminatory changes in
4   Kennedy's conditions of employment. <u>Farragher</u>, 477 U.S. 775 *at* 778. Furthermore, from a
5   subjective standpoint, Kennedy has admitted that she found MacIntyre's references
6   "inappropriate" and "ignorant", rather than hostile or abusive, as required by the statute.

7       Therefore, the Court grants summary judgment in favor of the Defendant as to Kennedy's
8   hostile work environment claims of racial discrimination under Title VII, Section 1981, and
9   N.R.S. 613.33.

10

11      **D. Title VII, Section 1981, and N.R.S. 613.33: Retaliation**

12      Kennedy alleges that her termination was in retaliation for her official complaints
13  regarding sexual harassment and racial discrimination. To prevail on her retaliation claim, a
14  plaintiff must demonstrate: (1) that she engaged in a protected activity; (2) that she suffered an
15  adverse employment action; and (3) that there is a causal link between the protected activity and
16  the adverse employment action. <u>See</u> <u>Dawson v. Entek Intern</u>, 630 F.3d 928, 936 (9th Cir. 2011).
17  To the extent that Kennedy alleges that her reclassification, and her transfer to the HR
18  department, were adverse employment actions, the Court does not find these actions to be
19  adverse employment actions. The Court finds it undisputed that Kennedy requested her
20  position's reclassification, which resulted in a 4% salary increase. The Court also finds it
21  undisputed that Kennedy requested her transfer to the HR department, was made an offer to
22  transfer, and subsequently accepted that offer. The Ninth Circuit has adopted the EEOC's
23  interpretation of "adverse employment action" to mean "any adverse treatment that is based on a
24  retaliatory motive and is reasonably likely to deter the charging party or others from engaging in
25  protected activity." *See* <u>Ray v. Henderson</u>, 217 F.3d 1234, 1243 (9th Cir. 2000). The Court does
26  not find that Kennedy's requested position reclassification, coupled with a raise, is "adverse
27  treatment" under the Ninth Circuit's interpretation. The Court additionally does not find that
28  UMC's offer for a departmental transfer, made pursuant to Kennedy's request and subsequently

1   accepted by Kennedy, is "adverse treatment" under the Ninth Circuit's interpretation. Therefore,

2   the Court analyzes Kennedy's retaliation claim as it pertains to her termination.

3       Protected activities under Title VII include opposing allegedly discriminatory acts by

4   one's employer. *Id*; *see also* 42 U.S.C. 2000(e)-3(a). They also include making informal

5   complaints to one's supervisor. *See* <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).

6   "When an employee protests the actions of a supervisor such opposition is a protected activity."

7   <u>Trent v. Valley Elec. Ass'n Inc</u>., 41 F.3d 524, 526 (9th Cir. 1994). Kennedy's complaints to

8   supervisors, her internal complaint to UMC's Office of Diversity, and her EEOC complaint, are

9   all protected activities under Title VII. Furthermore, Kennedy's termination constitutes an

10  adverse employment action. However, Defendant argues that there is insufficient temporal

11  proximity between Kennedy's complaints and her termination, and that Kennedy's complaints

12  about discrimination to the OOD and to the EEOC had no causal link to her termination.  The

13  Court agrees.

14      The Court finds that Plaintiff has not presented a genuine issue of disputed fact (or an

15  undisputed fact) to support the necessary causal link between the protected activities and the

16  adverse employment action.  But-for causation is required to satisfy the necessary element of a

17  "causal link" between the protected activity and the adverse employment action, under Title VII.

18  *See* <u>Univ. of Texas Southwestern Med. Ctr. v. Nassar</u>, 133 S.Ct. 2517, 2533 (2013) ("This

19  requires proof that the unlawful retaliation would not have occurred in the absence of the alleged

20  wrongful action or actions of the employer."). In this case, it is undisputed that there were

21  widespread, budget-related layoffs at the time of Kennedy's termination. Kennedy has not

22  offered facts to support the allegation that the desire to retaliate was a but-for cause of her

23  termination. Furthermore, while "temporal proximity between protected activity and an adverse

24  employment action can by itself constitute sufficient circumstantial evidence of retaliation in

25  some cases," Kennedy's termination occurred over a year after her more recent protected

26  activity, the filing of an EEOC complaint. *See* <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1069

27  (9th Cir. 2003).  This length of time does not support her allegation of retaliation. Therefore, the

28

1   Court grants summary judgment in favor of Defendant with respect to Kennedy's retaliation

2   claims under Title VII, Section 1983, and N.R.S. 613.33.

3

4         **D. ADEA: Age Discrimination**

5         The ADEA prohibits an employer from, among other things, discharging an employee

6   who is over forty years of age because of the employee's age. 29 U.S.C. 623(a)(1), 631(a). Under

7   a disparate treatment theory of discrimination, a plaintiff in an ADEA case can establish age

8   discrimination based on: (1) circumstantial evidence of age discrimination; or (2) direct evidence

9   of age discrimination. *See* Sheppard v. David Evans and Assoc., 693 F.3d 1045, 1049 (9th Cir.

10  2012). Claims of age discrimination based on circumstantial evidence are analyzed under the

11  three-stage burden shifting framework laid out in McDonnell Douglas Corp. v. Green. 411 U.S.

12  792 (1973). Under this framework, the employee must first establish a prima facie case of age

13  discrimination. *Id.*

14        "To establish a *prima facie* case of discrimination, a plaintiff must allege ... that (1) she

15  was at least forty years old; (2) she was performing her job satisfactorily; (3) she was discharged;

16  and (4) either replaced by a substantially younger employee with equal or inferior qualifications

17  or discharged under circumstances otherwise giving rise to an inference of age discrimination."

18  Sheppard v. David Evans and Assoc., 693 F.3d 1045, 1049 (9th Cir. 2012). "An inference of

19  discrimination can be established…by showing that others not in [one's] protected class were

20  treated more favorably." Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008).

21  Here, the only circumstantial evidence of age discrimination alleged by Kennedy is that Hilari

22  Alberto, a younger paralegal in a position junior to Kennedy's, was hired in the Risk

23  Management Department during her tenure in that department; that her supervisor closed his

24  door when meeting with the paralegal, but did not close his door when meeting with Kennedy;

25  and that her supervisor once mentioned aloud that he would like someone young around the

26  office. These facts are undisputed. These facts do not establish that Kennedy was "either

27  replaced by a substantially younger employee with equal or inferior qualifications, or discharged

28  under circumstances otherwise giving rise to an inference of age discrimination." Sheppard, 693

1   F.3d 1045 *at* 1049.  Kennedy left the Risk Management department at her own request. She fails

2   to allege any relationship between her move to HR in September 2013, and Alberto's hiring in

3   March 2013 in the Risk Management Department.  She also fails to allege any relationship

4   between her termination in August 2014, and Alberto's hiring in March 2013. Therefore, the

5   undisputed or disputed facts do not support her allegation that she was replaced or displaced her

6   from her position by a younger employee.  The Court grants summary judgment in favor of the

7   Defendant as to Plaintiff's age discrimination claims under the ADEA.

8

9                    **E. Intentional Infliction of Emotional Distress**

10          In order to prevail on a claim of intentional infliction of emotional distress ("IIED"), a

11   plaintiff must show (1) extreme and outrageous conduct with either the intention of, or reckless

12   disregard for, causing emotional distress; (2) the plaintiff's having suffered severe or extreme

13   emotional distress; and (3) actual or proximate causation. <u>Posadas v. City of Reno</u>, 851 P.2d 438,

14   444 (Nev. 1993). "Extreme and outrageous conduct," as an element of intentional infliction of

15   emotional distress, "is that which is outside all bounds of decency and is regarded as utterly

16   intolerable in a civilized community; persons must necessarily be expected and required to be

17   hardened to occasional acts that are definitely inconsiderate and unkind." <u>Maduike v. Agency</u>

18   <u>Rent-A-Car</u>, 953 P.2d 24, 26 (Nev. 1998). "In cases where emotional distress damages are not

19   secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact

20   must have occurred or, in the absence of physical impact, proof of 'serious emotional distress'

21   causing physical injury or illness must be presented." <u>Oliviero v. Lowe</u>, 116 Nev. 395, 399 (Nev.

22   2000).

23          Defendant argues that under Nevada law, intentional infliction of emotional distress does

24   not apply to a claim for employer discrimination. However, they cite to a Ninth Circuit

25   interpretation of Nevada Supreme Court law that has since been abrogated, <u>Brooks v. Hilton</u>

26   <u>Casinos, Inc.</u>, 959 F.2d 757 (9th Cir. 1992). "Contrary to the Ninth Circuit's holding in *Brooks*,

27   the clear implication of this court's language in *MGM Grand* is that the tort of intentional

28   infliction of emotional distress is cognizable in the employment termination context." <u>Shoen v.</u>

1    Americo, Inc., 896 P.2d 469, 476 (Nev. 1995). Regardless, the Court finds that there are no
2    disputes as to issues of material fact with regards to Kennedy's IIED claim, and that none of the
3    conduct alleged in this case is sufficient to amount to "extreme and outrageous conduct".
4    Furthermore, Kennedy has alleged no physical symptoms to establish severe emotional distress.
5    In her response to Defendant's Motion for Summary Judgment, Kennedy first raises that she
6    experienced anxiety and panic attacks. She attaches a single exhibit that states she was granted
7    leave from work for her anxiety. Ex. 22 to Resp. to MSJ, ECF No. 64.  The Court rejects the
8    reliability of this evidence.  However, even if accepted, such symptoms are insufficient to
9    establish severe emotional distress. See Oliviero, 116 Nev. 395 at 399. Therefore, the Court
10   grants summary judgment in favor of the Defendant as to Plaintiff's intentional inflection of
11   emotional distress claims.

12

13        **V.      CONCLUSION**

14        IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is
15   DENIED with respect to Plaintiff's sexual harassment claims under Title VII and N.R.S. 613.33.

16        IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is
17   GRANTED with respect to Plaintiff's racial discrimination claims under Title VII, 42 U.S.C. §
18   1981, and N.R.S. 613.33; retaliation claims under Title VII; sexual harassment claim under 42
19   U.S.C. 1981; age discrimination claim under the Age Discrimination in Employment Act
20   ("ADEA"); and intentional infliction of emotional distress claim.

21

22        **DATED**: August 25, 2016.

23

24                                            _____
25                                            **RICHARD F. BOULWARE, II**
                                             **UNITED STATES DISTRICT JUDGE**
26

27

28